1  Thomas B. Walper (CA Bar No. 096667)
   Bernard A. Eskandari (CA Bar No. 244395)
2  M. Lance Jasper (CA Bar No. 244516)
   MUNGER, TOLLES & OLSON LLP
3  355 South Grand Avenue
   Thirty-Fifth Floor
4  Los Angeles, California 90071-1560
   Telephone:    (213) 452-5593
5  Facsimile:    (213) 687-3702
   Email:        thomas.walper@mto.com
6                bernard.eskandari@mto.com
                 lance.jasper@mto.com
7
   Proposed *Pro Bono* Bankruptcy Counsel for Debtor and
8  Debtor-in-Possession

9
                    **UNITED STATES BANKRUPTCY COURT**
10
                     **CENTRAL DISTRICT OF CALIFORNIA**
11
                         **LOS ANGELES DIVISION**
12

13  In re                              Case No. 2:10-bk-28586-TD

14  **THE PASADENA PLAYHOUSE**
    **STATE THEATRE OF CALIFORNIA,**   Chapter 11
15  **INC.,**
                                       **SMALL BUSINESS CASE UNDER FRBP**
16              Debtor and Debtor-in-  **1020**
                Possession
17                                     **NOTICE OF EMERGENCY MOTION AND**
                                       **EMERGENCY MOTION FOR ORDER TO**
18                                     **APPROVE USE OF POST-PETITION**
                                       **DONATIONS; MEMORANDUM OF**
19                                     **POINTS AND AUTHORITIES IN**
                                       **SUPPORT THEREOF**
20
                                       <u>**Hearing**</u>
21                                     Date:    May 14, 2010
                                       Time:    10:00 a.m.
22                                     Place    Courtroom 1352
                                                255 East Temple Street
23                                              Los Angeles, California 90012

24

25

26

27

28

10589596.3

1  **TO THE HONORABLE THOMAS B. DONOVAN, UNITED STATES BANKRUPTCY**

2  **JUDGE; CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS;**

3  **THE CITY OF PASADENA; PARTIES REQUESTING SPECIAL NOTICE; AND THE**

4  **OFFICE OF THE UNITED STATES TRUSTEE:**

5  **PLEASE TAKE NOTICE** that The Pasadena Playhouse State Theatre of

6  California, Inc., a California nonprofit public benefit corporation (the "Debtor" or "PPST"),

7  hereby moves (the "Motion") this Court for entry of an order approving procedures to govern the

8  Debtor's use of certain donations to be provided post-petition.  Specifically, Debtor has received

9  over $200,000 in pledges from donors that are to be paid post-petition for the sole purpose of

10  paying expenses incurred or assumed post-petition and facilitating the Debtor's successful

11  reorganization under chapter 11, and not for the general payment of pre-petition debts.

12  Accordingly, pursuant to 11 U.S.C. §§ 363(b)(1) and 105(a), Debtor moves for

13  approval of the following procedures to meet the requirements necessary to collect and use the

14  donations:

15  (a) donations from the donors will be placed in a segregated, debtor-in-possession

16  bank account and will not be commingled with the Debtor's other assets;

17  (b) the Debtor will use donations solely to pay the costs and expenses incurred or

18  assumed by PPST post-petition;

19  (c) the Debtor will not use the donations to pay pre-petition debts other than

20  amounts arising upon assumption under 11 U.S.C. § 365 or amounts payable under a confirmed

21  and effective plan of reorganization; and

22  (d) the Debtor will return any unused portion of the donations (after payment of

23  permitted costs or expenses under (b) or (c)) to the donors on a pro rata basis if the Debtor's case

24  is converted to a case under chapter 7.

25  **PLEASE TAKE NOTICE** that Debtor has requested that the relief sought herein

26  be granted on an emergency basis to speed the collection and use of the pledged donations to

27  stabilize the Debtor's business, fund its operations during bankruptcy, and facilitate its successful

28  and rapid reorganization.  Debtor, therefore, pursuant to Rule 2081-1(a)(3) of the Local

1   Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California

2   (the "Local Bankruptcy Rules"),[1] requests that this Motion be heard on an emergency basis.

3   Granting the relief requested in this Motion on an emergency basis will benefit the estate

4   immediately as set forth above.

5           **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice

6   and Motion, the attached Memorandum, and the *Omnibus Declaration of Stephen Eich in Support*

7   *of the Emergency First-Day Motions* (the "Eich Declaration") filed concurrently herewith, the

8   arguments of counsel, and other admissible evidence properly brought before the Court at or

9   before the hearing on this Motion.  In addition, Debtor requests that the Court take judicial notice

10   of all documents filed with the Court in this case.

11           **PLEASE TAKE FURTHER NOTICE** that any opposition or objection to the

12   Motion must be filed with the Court and served on proposed counsel for Debtor at the above

13   address any time before the hearing or may be presented at the hearing on the Motion at the time

14   and place set forth above.  Your failure to timely object may be deemed by the Court to constitute

15   consent to the relief requested herein.

16           Debtor will serve this Notice and Motion and the attached Memorandum, and the

17   Eich Declaration, on (1) the office of the United States Trustee, (2) the creditors holding the

18   twenty largest unsecured claims, (3) the City of Pasadena, and (4) parties requesting special

19   notice.  To the extent necessary, Debtor requests that the Court waive compliance with Local

20   Bankruptcy Rule 9075-1(a)(5) and approve service (in addition to, or in place of, the means of

21   service set forth in that rule) by overnight delivery.  In the event that the Court grants the relief

22   requested by the Motion, Debtor shall provide notice of the entry of the order granting such relief

23   upon each of the foregoing parties and any other parties in interest as the Court directs.  Debtor

24   submits that such notice is appropriate in the particular circumstances and that no other or further

25   notice be given.

26           **WHEREFORE**, based on the Motion, the attached Memorandum of Points and

27
28   [1] Pursuant to Local Bankruptcy Rule 9075-1(a)(3), no separate motion for an expedited hearing is
required.

1  Authorities, and the Eich Declaration, Debtor respectfully requests that the Court enter an order

2  granting the relief sought in this Motion and such other and further relief as the Court deems just

3  and proper.

4

5  DATED: May 12, 2010                                    MUNGER, TOLLES & OLSON LLP

6

7                                                         By:  /s/ Bernard A. Eskandari
                                                              Bernard A. Eskandari
8
                                                         Proposed Counsel for Debtor and Debtor-in-
9                                                        Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.
### STATEMENT OF FACTS[2]

3

**A.**      **Jurisdiction and Venue**

4

       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Case is proper

6

pursuant to 28 U.S.C. §§ 1408 and 1409.

7

**B.**      **General Background**

8

       On May 10, 2010 (the "Petition Date"), The Pasadena Playhouse State Theatre of

9

California, Inc., a California nonprofit public benefit corporation (the "Debtor" or "PPST"), filed

10

for protection under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

11

The Debtor continues to operate its business and manages its affairs as a debtor in possession

12

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13

       As more fully set forth in the Eich Declaration, for more than 90 years, the

14

Pasadena Playhouse ("Playhouse") has been both a source of civic pride for the community of

15

Pasadena and greater Los Angeles, as well as a cornerstone of the region's performing-arts

16

culture. PPST was formed in 1979 with the express purpose of maintaining and preserving the

17

Playhouse, which was named to the National Register of Historic Places in 1974. Since 1996,

18

PPST has operated the Playhouse on a not-for-profit basis, taking a more direct role in the

19

fulfillment of its mission to ensure that the Playhouse is used for performing arts productions

20

open to the public. In addition to producing "main-stage" plays, among other things, the

21

Playhouse serves the community through partnerships with local schools and social-service

22

organizations, providing workshops and performances as a part of its regular curriculum.

23

       Since PPST took over operations of the Playhouse in 1996, it has achieved

24

significant artistic success but has struggled financially as a result of uncollected legacy debts.

25

As such, PPST has been forced to rely on substantial charitable contributions to fund its

26

27

28

---

[2] The following facts are generally set forth in the *Omnibus Declaration of Stephen Eich in Support of the Emergency First-Day Motions*.

1   operations.  During this period, a substantial portion of PPST's operating budget has been

2   devoted to debt service, and this has frustrated fundraising efforts as charitable foundations have

3   declined to donate to a non-profit with such high levels of indebtedness.  Furthermore, PPST's

4   attempts to secure a major donor by offering rights to the name of the Playhouse fell short, further

5   frustrating its attempts to extricate itself from its mounting financial burdens.  Finally, the

6   economic crisis of late 2008 dealt a crushing blow to PPST as a severe and immediate decline in

7   donations left PPST in critical financial condition.

8   **C.      Post-Petition Donations**

9            Notwithstanding the Debtor's difficult financial situation, PPST and the Playhouse

10  continue to enjoy substantial support from the community and from donors who would like to see

11  PPST reorganize and continue to put on shows at the historic Playhouse.  Several donors (the

12  "Post-petition Donors") in fact have pledged to provide an aggregate amount of approximately

13  $232,000 in post-petition donations.  The Post-petition Donors have made these donations to

14  bridge the operating expenses of PPST to a rapid and successful reorganization.  Accordingly, the

15  Post-petition Donors have conditioned their pledges on certain requirements and limitations on

16  the use of the donations.  These include the following:

17           (a) making the donation only after the filing of a voluntary chapter 11 bankruptcy

18  petition by the Debtor;

19           (b) permitting the Debtor to use the pledged amount "solely for purposes of paying

20  the costs and expenses that are incurred or assumed by PPST from and after the filing of the

21  Bankruptcy Petition, including, without limitation, to sustain the operations of PPST during the

22  bankruptcy process and to fund the future operations of PPST after its emergence;" and

23           (c) prohibiting the use of the donation "to pay debts incurred by PPST prior to the

24  filing of the" Debtor's Case, other than cure costs or amounts payable upon emergence under a

25  plan of reorganization.[3]

26           To meet these requirements and obtain these sizable and beneficial donations, the

27

28  _____
    [3]  A true and correct copy of one pledge is attached hereto as Exhibit 1.

1    Debtor requests that the Court approve the following procedures for the use of the donations

2    made by the Post-petition Donors:

3            (a) donations from Post-petition Donors will be placed in a segregated, debtor-in-

4    possession bank account and will not be commingled with the Debtor's other assets;

5            (b) the Debtor will use donations solely to pay the costs and expenses incurred or

6    assumed by PPST post-petition;

7            (c) the Debtor will not use the donations to pay pre-petition debts other than

8    amounts arising upon assumption under 11 U.S.C. § 365 or amounts payable under a confirmed

9    and effective plan of reorganization; and

10            (d) the Debtor will return any unused portion of the donations (after payment of

11    permitted costs or expenses under (b) or (c)) to the Post-petition Donors on a pro rata basis if the

12    Debtor's case is converted to a case under chapter 7.

**II.**
**ARGUMENT**

13

14

15            The Debtor's proposed procedures for the use of donations from Post-petition

16    Donors should be approved.  Under 11 U.S.C. § 363(b)(1), the Court may authorize the trustee (or

17    debtor-in-possession) "to use, other than in the ordinary course of business, property of the

18    estate." 11 U.S.C. § 363(b)(1).  Most courts, including court's in this circuit, hold that a motion

19    under this section should be approved if the debtor can offer a "valid business justification." *See,*

20    *e.g.*, *240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners,*

21    *Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) (debtor wishing to use § 363(b) to dispose of

22    property must demonstrate valid business justification).

23            The Debtor submits that approving the proposed procedures easily satisfies the

24    requirement of a valid business justification.  The procedures will ensure that the terms on which

25    the Post-petition Donors pledged to make the donations will be honored and will therefore

26    facilitate the collection of the pledges.  Further, the donations will help defray the Debtor's

27    operating expenses and assist it in achieving a successful reorganization and emergence from

28    bankruptcy.  Finally, the procedures further honor the terms on which the Post-petition Donors

1    made their pledges by providing for the return of the donations if the Debtor is unable to

2    reorganize.  Thus, the procedures are not only justified, they will also confer an immediate and

3    substantial benefit on the Debtor's estate and other parties in interest by promoting a successful

4    reorganization.

5       In addition, section 105 of the Bankruptcy Code provides further support for the

6    Court to grant the relief requested herein.  That section states that a bankruptcy court is authorized

7    to issue "any order, process, or judgment that is necessary or appropriate to carry out the

8    provisions of this title."  11 U.S.C. § 105(a).  This Court's equitable powers permit it to issue an

9    order that facilitates the receipt and appropriate use of the donations for the purpose of sustaining

10   the Debtor during its chapter 11 case and facilitating the Debtor's efforts to successfully emerge

11   from chapter 11.  *See, e.g.*, *In re Sasson*, 424 F.3d 864, 874 (9th Cir. 2005) ("[T]he bankruptcy

12   court may use its inherent equitable power to fashion relief, so long as the remedy is consistent

13   with the objectives of the Bankruptcy Code.").  PPST's ability to preserve the Playhouse and

14   contribute to the theatrical and artistic community depends on its ability to reorganize, of which

15   the receipt and use of the donations is a critical component.

16

17

18

19

20

21

22

23

24

25

26

27

28

10589596.3                                  - 4 -

1

2

### III.
### CONCLUSION

3

4

5

6

7

8

        Pursuant to 11 U.S.C. §§ 363(b)(1) and 105(a), Debtor respectfully requests that
the Court enter an order (a) approving the use of donations from Post-petition Donors in
accordance with the procedures set forth herein, including the return of any unused portion if the
Debtor's case is converted to a case under chapter 7, and (b) such other and further relief as the
Court deems just and proper.

9

DATED: May 12, 2010                              MUNGER, TOLLES & OLSON LLP

10

11

12

                                       By:___/s/ Bernard A. Eskandari_____
                                              Bernard A. Eskandari

13

14

                                       Proposed *Pro Bono* Bankruptcy Counsel for
                                       Debtor and Debtor-in-Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

**DONATION TO PASADENA PLAYHOUSE THEATRE OF CALIFORNIA, INC.**

**Name of Donor:** _Sheldon Epps_

**Donation Amount: $** _10,000_

Dear Pasadena Playhouse State Theatre of California, Inc. ("PPST"):

The donor identified above (the "Donor") hereby commits to donate to PPST the amount identified above (the "Donation"), subject to the five conditions set forth below:

1. the Donor will have no obligation to fund any of the Donation unless and until PPST has filed its voluntary bankruptcy petition (the "Bankruptcy Petition");

2. the Donor will fund the entire amount of the Donation no later than two business days after PPST has notified the Donor that PPST has filed the Bankruptcy Petition;

3. the Donation will be used solely for purposes of paying the costs and expenses that are incurred or assumed by PPST from and after the filing of the Bankruptcy Petition, including, without limitation, to sustain the operations of PPST during the bankruptcy process and to fund the future operations of PPST after its emergence (if ever at all) from bankruptcy;

4. the Donation may not be used to pay debts incurred by PPST prior to the filing of the Bankruptcy Petition (other than cure costs or other amounts payable by PPST as part of its emergence from bankruptcy or under its plan of reorganization); and

5. unless the Donor agrees otherwise, the commitment hereunder of the Donor to make the Donation will expire automatically if PPST does not file the Bankruptcy Petition on or before May 31, 2010.

In making the Donation, the Donor acknowledges the Donor has had the opportunity to ask such questions about PPST and receive such answers from PPST and its officers and directors, including, without limitation, about its financial condition and future plans, as the Donor believes to be prudent. The Donor understands that, among other things:

    a.  PPST is in severe financial distress and lacks sufficient funds to maintain basic operations;

    b.  PPST intends to file for bankruptcy, intends to seek to reorganize itself and hopes to emerge from bankruptcy free from some of its outstanding debts and capable of resuming performances at the Pasadena Playhouse;

    c.  PPST attempts to reorganize itself and emerge from bankruptcy could fail for any number of reasons, including, without limitation, because:

        i.  PPST may be unable to raise sufficient money to sustain itself during the bankruptcy process;

        ii.  the U.S. Bankruptcy Court may disagree with PPST's reorganization plan; or

        iii.  personnel departures or other circumstances could adversely affect PPST's ability to reorganize itself;

    d.  any failure by PPST to reorganize itself and emerge from bankruptcy would likely lead to the liquidation of PPST and the cessation of business; and

    e.  there is no assurance that PPST will be able to reorganize itself and emerge from bankruptcy successfully.

e. there is no assurance that PPST will be able to reorganize itself and emerge from
   bankruptcy successfully.


Notwithstanding this substantial risk of failure, the Donor is nevertheless willing to
make the Donation in order to assist PPST in its attempt to reorganize itself through
the bankruptcy process.

The Donor consents to the disclosure of the Donation and this document to the U.S.
Bankruptcy Court and other parties for purposes of evidencing the financial support for
PPST to operate during bankruptcy.

Very truly yours,

(Signature of Authorized Signatory of
Donor)



(Print Name and Title)


4/2/10
(Date)